**David A. SCHLACHTER, Appellant,**

v.

**RAILROAD COMMISSION OF TEXAS, Appellee.**

**No. 3–91–052–CV.**

Court of Appeals of Texas, Austin.

Jan. 29, 1992.

Rehearing Overruled Feb. 19, 1992.

Seldon B. Graham, Jr., Austin, for appellant.

Dan Morales, Atty. Gen., Joe Foy, Jr., Asst. Atty. Gen., Austin, for appellee.

Before POWERS, JONES and BEA ANN SMITH, JJ.

JONES, Justice.

David A. Schlachter, appellant, applied to the Railroad Commission of Texas (Commission), appellee, for an exception to the statewide oil and gas well spacing rule, Rule 37. *See* Tex.R.R.Comm., 16 Tex.Admin.Code § 3.37(a)(1) (1991–92). The Commission denied the application, and Schlachter sought review of that denial by a Travis County district court pursuant to the Administrative Procedure and Texas Register Act (APTRA), Tex.Rev.Civ.Stat. Ann. art. 6252–13a, § 19 (Pamph.1992). The district court upheld the Commission's decision. Schlachter appeals to this Court, asserting that the district court incorrectly

interpreted applicable law. We will affirm the judgment of the district court.

## BACKGROUND

Schlachter's "O'Neal Well No. 3" was last completed in the Chapel Hill (Rodessa) Field in Smith County, Texas. The well eventually ceased to produce from the Rodessa formation; therefore, in 1989 Schlachter sought to recomplete O'Neal No. 3 in the Chapel Hill (Pettit) Field. Rule 37 requires a minimum of 467 feet between a well and any property line.[1] Because O'Neal No. 3 is situated only 173 feet from an adjacent lease boundary, Schlachter applied to the Commission for an exception to Rule 37 based on the prevention of waste. An adjacent leaseholder and operator, not a party to this appeal, protested the application. After a hearing, the Commission denied Schlachter's application.

## DISCUSSION

### 1. *Standard of Review*

▆▆▆▆ Final orders of the Commission are deemed to be prima facie valid and are subject to judicial review under the substantial evidence rule. *See* APTRA § 19(d), (e); *Railroad Comm'n v. Pend Oreille Oil & Gas Co.*, 817 S.W.2d 36, 40–41 (Tex.1991); *Imperial Am. Resources Fund, Inc. v. Railroad Comm'n*, 557 S.W.2d 280, 284–85 (Tex.1977). The supreme court has established the following general principles for the review of Commission orders:

In a judicial review of a Railroad Commission order, it is well settled that the court does not substitute its judgment for that of the administrative agency. In this regard, the question for the courts is whether the contested order is reasonably supported by substantial evidence. In appeals, the burden is upon the com-

plaining parties to show an absence of substantial evidence and that the orders are unreasonable and unjust to them.... Where there is substantial evidence which would support either affirmative or negative findings, the order will be upheld, even though the Commission might have arrived at a decision contrary to that which the court might have reached. The correct test is whether the evidence as a whole is such that reasonable minds could have reached the conclusion that the Railroad Commission must have reached in order to justify its action.... In [*Railroad Commission v. Shell Oil Co.*, [139 Tex. 66], 161 S.W.2d 1022 (Tex.1942)], the court said: "... In such a case the issue is not whether or not the agency came to the proper fact conclusion on the basis of the conflicting evidence, but whether or not it acted arbitrarily and without regard to the facts. Hence it is generally recognized that where the order of the agency under attack involves the exercise of the sound judgment and discretion of the agency in a matter committed to it by the Legislature, the court will sustain the order if the action of the agency in reaching such conclusion is reasonably supported by substantial evidence...."

*Auto Convoy Co. v. Railroad Comm'n*, 507 S.W.2d 718, 722 (Tex.1974) (citations omitted). Finally, our judicial review must be based on the record made before the Commission. *See Imperial Am. Resources Fund*, 557 S.W.2d at 284–85.

### 2. *The Waste Exception to Rule 37*

In six points of error, Schlachter asserts that the Commission and the district court misinterpreted and misapplied the law stated by the Texas Supreme Court in *Exxon Corp. v. Railroad Commission*, 571 S.W.2d 497 (Tex.1978). In *Exxon*, BTA Oil

---

1. Rule 37 provides:
   No well for oil, gas, or geothermal resource shall hereafter be drilled nearer than 1,200 feet to any well completed in or drilling to the same horizon on the same tract or farm, and no well shall be drilled nearer than 467 feet to any property line, lease line, or subdivision line; provided the commission, in order to prevent waste or to prevent the confiscation of property, may grant exceptions to permit drilling within shorter distances than prescribed in this paragraph when the commission shall determine that such exceptions are necessary either to prevent waste or to prevent the confiscation of property. Tex.R.R.Comm., 16 Tex.Admin.Code § 3.37(a)(1) (1991–92).

Producers sought a permit to recomplete an existing well bore, "Wedge No. 2," that was only 265 feet from another well already in the same formation and on the same tract. There was evidence that other existing wells could not recover oil in the vicinity of Wedge No. 2. Therefore, BTA applied to the Commission for a Rule 37 exception based on both waste and confiscation. The Commission granted the application based solely on BTA's waste argument. Exxon, an interested offset operator, brought suit in district court to set aside the Commission's order. The district court upheld the Commission's order, and Exxon appealed directly to the supreme court. *Exxon*, 571 S.W.2d at 498–99.

In granting BTA's application, the Commission concluded that the Wedge No. 2 well would recover oil that was otherwise unrecoverable by any existing well and, therefore, was necessary to prevent waste. The Commission came to this conclusion despite the fact that BTA admitted that a new well drilled at a regular location in accordance with Rule 37 probably could recover any oil reserves recoverable by Wedge No. 2. Exxon argued that in order to obtain a Rule 37 exception based on waste, an applicant must show that unusual reservoir conditions exist. *Id.* at 499–500. Exxon's position was that BTA failed to show the existence of unusual reservoir conditions because BTA admitted that a new well drilled at a regular location would recover the oil reserves. *Id.* The supreme court rejected Exxon's argument as too restrictive, noting that " 'other unusual circumstances,' i.e., other than underground conditions, could justify the granting of a Rule 37 exception." *Id.* at 501. In concluding that the Commission's order granting BTA's application for a Rule 37 exception was supported by substantial evidence, the supreme court held that economic circumstances could also be considered by the Commission:

> In the present case, the requirements of the *Trem Carr* [*Railroad Commission v. Shell Oil Co.*, 139 Tex. 66, 161 S.W.2d 1022 (1942)] and *Wrather* [*v. Humble Oil and Refining Co.*, 147 Tex. 144, 214 S.W.2d 112 (1948)] cases for a

showing of unusual conditions has been met. The most obvious condition which differentiates the permit location from regular locations on BTA's tract is the presence of an existing well bore. While it is agreed that the Wedge No. 2 well bore will encounter the Devonian Field at approximately the same thickness that a regular location would, there is also evidence that it is not economically feasible to drill at a regular location. In addition, there is a finding, supported by evidence, that the oil that would be produced from the Wedge No. 2 well cannot be produced by any other existing well. There was, therefore, an adequate basis for the Railroad Commission's finding that recompletion of the Wedge No. 2 well in the Devonian Field was necessary to prevent the waste of oil.

*Id.*

Schlachter argues that the supreme court's holding in *Exxon* created a new category of waste, other than the physical waste of oil, that justifies the granting of a Rule 37 exception: "economic waste." Schlachter reasons that because he can recomplete O'Neal Well No. 3 in the Pettit formation for less than he can drill a new well, *Exxon* entitles him as a matter of law to a Rule 37 exception in order to prevent "wasting" his own economic resources. We disagree.

The supreme court has defined the term "waste," as it is used in Rule 37, to mean "the ultimate loss of oil." *Gulf Land Co. v. Atlantic Ref. Co.*, 134 Tex. 59, 131 S.W.2d 73, 80 (1939). "If a substantial amount of oil will be saved by the drilling of a well that otherwise would ultimately be lost, the permit to drill such well may be justified under one of the exceptions provided in Rule 37 to prevent waste." *Id.* Thus the ultimate consideration for the Commission in granting or denying a Rule 37 exception based on the prevention of waste is whether or not a denial of the exception will result in the ultimate loss of minerals to the State of Texas.

We do not read *Exxon* to enlarge this definition of waste. *Exxon* merely upheld

 

the Commission's reasoning that circumstances other than unusual *reservoir conditions* can contribute to a loss of oil reserves. Economic factors can also have a hand in causing such waste. In *Exxon,* BTA's expert witness testified that although the oil could be recovered by drilling a completely new well at a regular location, BTA could not economically justify such drilling. Thus, BTA's position was that, because financial constraints would prevent it from drilling a new well, the Rule 37 exception was necessary to prevent waste of oil. The supreme court simply held that the Commission could consider this economic factor in determining whether to grant the exception: "In the context of the present case, economic factors were relevant to BTA's application and were properly considered by the Commission in determining whether a Rule 37 exception was *necessary to prevent the waste of oil." Exxon,* 571 S.W.2d at 502 (emphasis added).

 Thus, we read *Exxon* to hold that the Commission is not limited to considering unusual *reservoir* conditions in determining whether to grant a Rule 37 exception based on the prevention of waste. In the context of an existing well bore, the Commission may, for example, grant a Rule 37 exception if: (1) the existing well bore will recover oil reserves that cannot be produced by any other existing well; and (2) it is not economically feasible to drill at a regular location. The Commission may grant the exception even if drilling a new well at a regular location would recover the oil reserves recoverable by the existing well bore.

### 3. *Evidence Supporting the Commission's Order*

 After reviewing the record in this case, we conclude that the Commission's denial of Schlachter's application was reasonably supported by substantial evidence. First, there is expert testimony in the record that existing wells other than O'Neal Well No. 3 are capable of recovering the remaining oil reserves in the Pettit formation. Further, there is evidence that

it would be economically feasible for Schlachter to drill a new well at a regular location. Schlachter estimated that the cost to drill a new well would be about $344,495. However, there is evidence that the value of the recoverable oil reserves would be $1.18 million after operating expenses. The Commission was entitled to conclude that granting the exception was not necessary to prevent waste.

### CONCLUSION

Based on our foregoing discussion of the applicable law and our review of the record, we cannot conclude that the Commission misinterpreted or misapplied controlling legal principles. Nor does it appear that the Commission acted arbitrarily and without regard to the facts. The Commission's denial of Schlachter's application for a Rule 37 exception is supported by substantial evidence in the record. Accordingly, we overrule Schlachter's points of error and affirm the district court's judgment.

