**STATE of Texas, Public Utility Commission of Texas, and Houston Lighting & Power Company, Appellants,**

v.

**OFFICE OF PUBLIC UTILITY COUNSEL, Appellees.**

**No. 3–92–064–CV.**

Court of Appeals of Texas, Austin.

March 10, 1993.

Rehearing Overruled April 28, 1993.

---

2. *See Zwick v. Lodewijk Corp.*, 847 S.W.2d at    318, n. 3 (Tex.App.–Texarkana 1993, n.w.h.).

Robert J. Hearon, Jr., Graves, Dougherty, Hearon & Moody, Austin, for Houston Lighting & Power Co.

Dan Morales, Atty. Gen., Steven Baron, Asst. Atty. Gen., Austin, for Public Utility Com'n.

Dan Morales, Atty. Gen., W. Scott McCollough, Richard A. Muscat, Asst. Attys. Gen., Austin, for State.

John L. Laakso, Office of Public Utility Counsel, Austin, for Office of Public Utility Counsel.

Before CARROLL, C.J., and JONES and KIDD, JJ.

KIDD, Justice.

This appeal arises from a suit for judicial review of an order by the Public Utility Commission of Texas (the "Commission") granting a rate-change petition submitted by Houston Lighting & Power Company ("HL & P"). Following extensive discovery and hearings, the Commission issued a final order under docket numbers 6765, 6766, and 6930 granting HL & P's petition. In separate causes, the Office of the Public Utility Counsel (the "OPUC"), HL & P, and the State of Texas (the "State")[1] sought judicial review of the Commission's order in district court. The district court consolidated the causes and affirmed the order in all respects except for the Commission's decision to include construction work in progress ("CWIP")[2] in HL & P's rate base.

1. The State of Texas brought suit on behalf of Texas state agencies.

2. CWIP represents a utility's investment in the planning and construction of facilities which are yet to be completed and placed in service.

The Commission usually sets a utility's maximum allowable return based on the utility's rate base, which primarily consists of invested capital in facilities currently in use. Under exceptional circumstances, however, the Commission is empowered to authorize the inclusion of part

Both HL & P and the Commission appeal the district court's reversal of the Commission's order allowing inclusion of CWIP. In addition, the State appeals the district court's decision affirming the Commission's approval of HL & P's proposed late-payment penalty. We will affirm in part and reverse and remand in part.

## BACKGROUND AND PROCEDURAL HISTORY

This case originated when HL & P filed a system-wide application on March 18, 1986, to increase its rates in the unincorporated areas that it serves. The Commission styled HL & P's application as docket number 6765 and later consolidated it with docket numbers 6766 and 6960. Docket numbers 6766 and 6960 concerned, respectively, HL & P's proposed interim accounting treatment for Limestone Unit I and a citizen's appeal of the City of Houston's approval of HL & P's request to increase its rates within Houston's corporate limits. The Commission held hearings under these docket numbers from June 30, 1986, through August 7, 1986. Based on these hearings and a 422–page examiner's report, the Commission issued a final order on November 14, 1986, adopting most of the findings of fact and conclusions of law contained in the examiner's report. The order approved HL & P's rate-increase request, albeit at levels lower than those the utility requested, and included authorization for the inclusion of $678,072,000 of CWIP in HL & P's rate base. The order

also included a three percent late payment penalty on non-residential customers.[3]

The Commission's order authorized the inclusion of $678,072,000 of CWIP in HL & P's rate base pursuant to section 41(a) of the Public Utility Regulatory Act.[4] The Commission took a three-tiered approach in determining whether HL & P was eligible to receive a CWIP allowance pursuant to section 41(a).[5] First, the Commission determined whether HL & P met a "threshold test" of "exceptional circumstances," which controlled whether it was eligible for *any* CWIP at all.[6] Second, the Commission calculated the amount of CWIP necessary to preserve the financial integrity of the utility.[7] Finally, the Commission determined that none of this CWIP allowance included major projects that were inefficiently or imprudently planned or managed.

The Commission's order also adopted findings of fact approving HL & P's request for a three-percent late-payment penalty for nonresidential customers.[8] This approval was pursuant to PUC Substantive Rule section 23.45(b), which authorizes utilities to assess a penalty, not to exceed five percent, on delinquent nonresidential bills.[9] Based on this provision, the Commission concluded that HL & P's request for the late payment penalty was reasonable and approved the request in its final order.

In separate causes, HL & P, the OPUC, and the State sought judicial review of the Commission's order pursuant to section 69 of PURA and section 19 of the Administrative Procedure and Texas Register Act.[10]

of a utility's CWIP balance in its rate base. This is essentially a form of rate relief because it allows the utility to collect additional revenue without a concomitant increase of facilities in service.

3. The Commission issued a clarification order on December 2, 1986; however, this order did not make substantive changes to the November order.

4. Public Utility Regulatory Act ("PURA"), Tex. Rev.Civ.Stat.Ann. art. 1446c (West Supp.1993). PURA is the Commission's enabling statute.

5. These three stages in the Commission's deliberation reflect the requirements of PUC Substantive Rule § 23.21(c)(2)(D), which implements PURA § 41(a).

6. In finding of fact no. 45 and conclusion of law no. 15, the Commission ruled that HL & P met this threshold test and, therefore, was eligible for the inclusion of some CWIP in its rate base.

7. In findings of fact nos. 198 and 199 and conclusions of law nos. 38 and 39, the Commission determined that 32% of HL & P's total CWIP balance, or $678,072,000, was necessary to maintain the utility's financial integrity.

8. Findings of fact nos. 198 and 199; conclusions of law nos. 38 and 39.

9. 16 Tex.Admin.Code § 23.45(b).

10. Administrative Procedure and Texas Register Act ("APTRA"), Tex.Rev.Civ.Stat.Ann. art. 6252–13a (West Supp.1993).

In its petition to the district court, the OPUC objected to the Commission's decision to include $678,072,000 of CWIP in HL & P's rate base, in addition to other objections presented during the hearings. The State sought reversal of the Commission's approval of HL & P's late payment penalty as applied to state agencies. HL & P's action sought to overturn those portions of the Commission's order which did not grant the full rate adjustment it had requested. On May 11, 1990, the district court held a hearing on consolidation and concluded that these causes involved common questions of fact and law, and ordered that the causes be consolidated for all purposes under cause number 411,593.

After considering the parties' briefs and arguments, the district court rendered a judgment upholding all portions of the Commission's final order except the Commission's authorization of the inclusion of CWIP. The district court held that the Commission misapplied the threshold test of section 41(a) by failing to require a showing of "exceptional circumstances." The district court found that, in place of a showing of exceptional circumstances, the Commission merely required HL & P to show circumstances that deviated from the industry norm.

## DISCUSSION

### 1. Reversal of the Commission's CWIP Decision

In three points of error, the Commission and HL & P contend that the district court erred in reversing the Commission's approval of HL & P's request for the inclusion of CWIP in its rate base. Both parties argue on appeal that the Commission fully complied with PURA section 41(a), and that

there is substantial evidence supporting the Commission's decision.

As a preliminary matter, we will consider HL & P's first point of error, which contends that the district court improperly construed section 41(a) as requiring a threshold inquiry into whether exceptional circumstances justify the inclusion of CWIP in a utility's rate base. HL & P argues that the language of section 41(a) does not establish a threshold requirement of "exceptional circumstances" independent from the financial integrity and prudent management requirements expressly stated in the statute. HL & P suggests that section 41(a) requires only a two-tier inquiry: (1) whether CWIP is necessary to maintain the utility's financial integrity, and (2) whether the utility's major projects were prudently planned and managed. We disagree with this construction of the statute.

The legislative history of section 41(a) and the Commission's own substantive rules support the existence of an independent threshold inquiry of exceptional circumstances. Prior to the legislature's 1983 amendment of section 41(a), the sole requirement for the inclusion of CWIP was a showing by the utility that the CWIP allowance was necessary to maintain the utility's financial integrity.[11] As amended, section 41(a) designates the inclusion of CWIP as an *exceptional remedy*. The legislature retained the previous financial integrity test, but added an additional requirement excluding any CWIP allowance for projects imprudently planned or managed.[12] The floor debate on this amendment clearly reveals that the legislature's intent was to prevent the Commission from authorizing CWIP allowances as a matter of course, and to restrict CWIP awards to

---

11. The pre-amendment text of PURA § 41(a) stated the following in regard to CWIP:

Utility rates shall be based upon the adjusted value of property used by and useful to the public utility in providing service including where necessary to the financial integrity of the utility construction work in progress at cost as recorded on the books of the utility. Act of June 21, 1975, 64th Leg., R.S., ch. 721, § 41(a), 1975 Tex.Gen.Laws 2341 (amended 1983) (current version at Tex.Rev.Civ.Stat.Ann. art. 1446c (West Supp.1993)).

12. The amended version of PURA § 41(a) states:

The inclusion of construction work in progress is an exceptional form of rate relief to be granted only upon the demonstration by the utility that such inclusion is necessary to the financial integrity of the utility. Construction work in progress shall not be included in the rate base for major projects under construction to the extent that such projects have been inefficiently or imprudently planned or managed. Tex.Civ.Stat.Ann. art. 1446c (West 1993).

only those cases where the utility could demonstrate circumstances justifying an exceptional form of rate relief.[13] HL & P's construction of section 41(a) deprives the language added by the legislature in 1983 of any effect and defeats the legislature's purpose in amending the statute. Such a construction of section 41(a) runs counter to the maxim that every word of a statute must be treated as if it were used for a purpose and must be given effect if possible. *Univ. of Tex. at Austin v. Joki*, 735 S.W.2d 505, 508 (Tex.App.—Austin 1987, writ denied).

HL & P's construction of section 41(a) is also contrary to the substantive rule promulgated by the Commission in response to the legislature's 1983 amendment of the section. PUC Substantive Rule section 23.-21(c)(2)(D),[14] which serves as the basis of the Commission's three-tiered approach to determining whether a CWIP allowance should be granted, states that CWIP may be granted only under *exceptional circumstances.* The Commission's adoption of the threshold exceptional-circumstances requirement in agency rules designed to implement the requirements of section 41(a) weakens HL & P's argument that the statute does not require an independent inquiry into whether exceptional circumstances warrant a CWIP allowance. Therefore, we conclude that the current version of section 41(a) requires a threshold showing of exceptional circumstances, in addition to the requirements of financial integrity and prudent management, and we accordingly overrule HL & P's first point of error.

We now turn to the issue of whether the criteria that the Commission used in this threshold test, as part of its three-tier CWIP analysis, comported with the requirements of section 41(a). The Commission based its threshold finding of exceptional circumstances on an analysis of selected financial indicators. The Commission examined HL & P's ratio of construction to net plant, cash-flow coverage of dividends, and the utility's bond rating.[15] The Commission compared these statistics to national averages for electric utilities, and concluded that HL & P's construction to net plant ratio and its cash-flow coverage deviated from industry averages.[16] Based on this analysis, the Commission concluded that the threshold requirement of exceptional circumstances had been met and proceeded with the remaining two tiers of its analysis.

In its sole point of error, the Commission argues that its application of the threshold exceptional-circumstances test comported with the requirements of section 41(a). The OPUC contends, however, that the Commission's criteria do not require a showing of exceptional circumstances, as was the legislature's intent when it amended section 41(a). At most, according to the OPUC, these criteria show only that HL & P currently has a large construction program in progress. The OPUC argues that these criteria are based on the same type of financial indicators used to assess financial integrity under the old version of section 41(a) and, thus, reflect a "business as usual" approach by the Commission that ignores the legislature's intent to restrict the authorization of CWIP to cases involving exceptional circumstances. We disagree.

■■ A reviewing court should afford the agency discretion in interpreting and executing its statutory duties, especially in

---

**13.** Senator Caperton, the sponsor of the amendment, stated the purpose of the amendment as follows:

> [CWIP] is going to be treated as an exceptional form of rate relief ... it is not to be parceled out as a matter of course.... It is indeed an unusual form of rate relief that a utility company must go to the regulatory authority and justify.

Debate on Tex.S.B. 232 on the Floor of the Senate, 68th Leg., R.S. 9 (April 6, 1983) (transcript available from Senate Staff Services Office).

**14.** 16 Tex.Admin.Code § 23.21(c)(2)(D).

**15.** During the hearings, Commission staff explained that the net construction ratio and cash flow coverage ratio are key statistics used by the financial community in assessing the financial condition of a utility.

**16.** HL & P's construction to net plant ratio was 30.5%, compared with an industry average of 22.01%, and its cashflow coverage of dividends 2.1X, compared to an industry average of 2.6X.

cases where statutory requirements are ambiguous or ill-defined. *Southwestern Bell Tel. Co. v. Public Util. Comm'n*, 745 S.W.2d 918, 923–24 (Tex.App.—Austin 1988, writ denied). We have stated that the Commission's construction of PURA should be followed, provided this construction is reasonable and does not contradict the plain language of the statute. *Id.; Southwestern Bell Tel. Co. v. Public Util. Comm'n*, 735 S.W.2d 663 (Tex.App.—Austin 1987, no writ).

■ The fact that the Commission utilized financial indicators that reflected HL & P's financial integrity does not mean that these variables are inappropriate criteria for deciding whether the utility has demonstrated exceptional circumstances. In fact, any financial indicator used by the Commission would in some way bear on HL & P's financial integrity. Yet, it is difficult to conceive of any satisfactory alternative to using financial indicators in determining whether there are exceptional circumstances.[17] Similarly, the OPUC's argument that the Commission's criteria show nothing more than a large construction program fails to consider that, in many cases, a large construction program could reasonably be deemed to be "exceptional" for the purposes of including CWIP in a utility's rate base. The Commission's task is further complicated by the necessity of applying these statutory tests in the technically complex environment of electric utilities.[18] Accordingly, we conclude that the Commission's criteria defining exceptional circumstances are reasonable and do not contradict the plain meaning of section 41(a). We therefore sustain the Commission's sole point of error.

■ HL & P's last point of error asserts that the Commission's CWIP decision is supported by substantial evidence. The substantial-evidence test is the appropriate standard of review for assessing the evidentiary foundation of an agency's action.

United *Resources Recovery, Inc. v. Texas Water Comm'n*, 815 S.W.2d 797, 801 (Tex. App.—Austin 1991, writ denied). This rule requires a reviewing court to determine whether the evidence as a whole is such that reasonable minds could have reached the same conclusion the agency must have reached in order to take the disputed action. *Texas State Bd. of Dental Examiners v. Sizemore*, 759 S.W.2d 114, 116 (Tex. 1988), *cert. denied*, 490 U.S. 1080, 109 S.Ct. 2100, 104 L.Ed.2d 662 (1989). However, this standard of review should be distinguished from the district court's inquiry in this cause. The district court's judgment addressed the Commission's selection of criteria in applying the first tier of its three-tier CWIP analysis and, therefore, never reached the question of whether the second and third tier of the Commission's CWIP decision was supported by substantial evidence. Accordingly, we overrule HL & P's final point of error and remand the cause to the district court for a substantial-evidence review of (1) the Commission's decision as to the amount of CWIP authorized and (2) the Commission's conclusion that none of the authorized CWIP allowance represented construction projects that were inefficiently or imprudently planned or managed.

## 2. Late Payment Penalty

■ In seven points of error, the State complains of the district court's decision affirming the Commission's authorization for HL & P to assess a three-percent late-payment penalty. In the past, we have stated that the Commission has discretion in designing rate structures as long as the rate structure is just and reasonable. *Public Util. Comm'n v. Houston Lighting & Power Co.*, 715 S.W.2d 98, 103–04 (Tex. App.—Austin 1986) *rev'd on other grounds*, 748 S.W.2d 439 (Tex.1988); *Texas Alarm & Signal Ass'n v. Public Util. Comm'n*, 603 S.W.2d 766, 772 (Tex.1980).

---

17. In fact, during oral argument, the OPUC's counsel had no response when asked to define the criteria he thought would be more appropriate to show exceptional circumstances.

18. The examiner's report hints at the complexity of the problem. At one point, the report states that the criteria and indicators used in the Commission's CWIP analysis often must be varied from utility to utility because of the complex differences in financial and operating conditions among utilities.

This degree of discretion reflects the fact that rate design is a complex problem that involves the consideration of numerous factors. *Texas Alarm & Signal Ass'n*, 603 S.W.2d at 772.

■ In its first three points of error, the State argues that the Commission lacks the authority to approve a late-payment penalty that is unrelated to costs. We disagree. The standard set out in *Texas Alarm & Signal Ass'n* allows the Commission to consider a range of factors, in addition to cost, when determining the proper rate structure. *Id.* Thus, as long as the rate structure as a whole is just and reasonable, the Commission has the authority to permit HL & P to assess a late-payment penalty. Consequently, we overrule the State's first three points of error.

■ The State's fourth, fifth, and sixth points of error essentially complain of the Commission's finding that HL & P's late-payment penalty is reasonable. The State argues that state agencies must comply with complex accounting procedures before they may pay vendors, and that these procedures create delays in paying utility bills. Thus, according to the State, the provisions of HL & P's late-payment penalty would unfairly subject the State to excessive late-payment penalties. We disagree. The Commission provided evidence that late-payment penalties serve an important role by creating an incentive for timely payment. Based on the record and arguments of the parties, we believe that there is substantial evidence supporting the reasonableness of the late-payment penalty. The fact that the late-payment penalty might place some burden on state agencies is not controlling as long as the penalty has a reasonable basis.[19] We overrule the State's fourth, fifth, and sixth points of error.

The State's seventh and final point of error asks us to reverse the district court's denial of the State's request for a declaratory judgment to the effect that the Commission's approval of HL & P's late payment penalty interferes or threatens to interfere with the State's legal rights and duties. For the reasons set out above, we conclude that the Commission's order was just and reasonable and, therefore, overrule the State's final point of error.

## CONCLUSION

We reverse that portion of the district court's order reversing the Commission's inclusion of CWIP in HL & P's rate base and we remand this portion of the cause to the district court for a substantial-evidence review of (1) the Commission's decision as to the amount of CWIP authorized, and (2) the Commission's conclusion that none of the authorized CWIP allowance represented construction projects that were inefficiently or imprudently planned or managed. We affirm the remainder of the district court's judgment.

JONES, Justice, concurring.

This is an administrative appeal originating from an order of the Public Utility Commission of Texas that granted rate-base treatment for certain construction work in progress ("CWIP") requested by Houston Lighting & Power Company (HL & P). I agree with the result reached by the majority. I also agree with the holdings in the majority opinion, with one exception. I cannot agree that section 41(a) of the Public Utility Regulatory Act (PURA), Tex.Rev.Civ.Stat.Ann. art. 1446c (West Supp.1993), may be construed to create—or permit—an independent threshold test of "exceptional circumstances" before the Commission is authorized to grant CWIP.

The relevant portion of section 41(a) provides:

19. Two portions of the record suggest that the penalty was not unreasonably burdensome. First, in response to the State's concern about the penalty, the Commission created a special exception under which state agencies would not be subject to the penalty if they paid their bills within 30 days after the bills were sent. At the time, the grace period for other commercial and industrial customers was 16 days. Second, the evidence before the Commission indicated that state agencies were continuously changing their procedures in order to streamline the bill-payment process, and that some state agencies served by HL & P could actually meet the stricter 16-day payment limits if necessary.

The inclusion of construction work in progress is an exceptional form of rate relief to be granted only upon the demonstration by the utility that such inclusion is necessary to the financial integrity of the utility. Construction work in progress shall not be included in the rate base for major projects under construction to the extent that such projects have been inefficiently or imprudently planned or managed.

PURA § 41(a). In my opinion, the phrase "exceptional form of rate relief" was intended merely to underscore the seriousness of the requirement that such inclusion be "necessary to the financial integrity of the utility"; in other words, the purpose of the phrase was to stress that, in Senator Caperton's words, "[CWIP] is not to be parcelled out as a matter of course."

When CWIP is truly necessary to the financial integrity of a utility as a result of a project that has been efficiently and prudently planned and managed, surely that condition is, almost by definition, an exceptional circumstance. The addition, therefore, of a threshold test of "exceptional circumstances" can do nothing but add further complexity to a process that is already complex enough.