**CITY OF FORT WORTH,**
Texas, Appellant,

v.

**William E. HARTY, John W. Powell, and Gary D. Wigley, Appellees.**

No. 2–92–255–CV.

Court of Appeals of Texas, Fort Worth.

Sept. 14, 1993.

Rehearing Overruled Nov. 5, 1993.

Wade Adkins, City Atty., Theodore P. Gorski, Jr., Asst., Fort Worth, for appellant.

Law Offices of Lane & Lane, Jim Lane, Fort Worth, for appellee.

Before HILL, C.J., and HICKS and FARRAR, JJ.

OPINION

HILL, Chief Justice.

The City of Fort Worth appeals the trial court's judgment that William E. Harty, John W. Powell, and Gary D. Wigley, the appellees, are police officers as defined in chapter 143, Local Government Code, particularly section 143.003(5); that they were appointed in substantial compliance with chapter 143; and that they are therefore entitled to civil service status as employees of the City of Fort Worth.

The City urges in three points of error that the doctrines of stare decisis, res judicata, and collateral estoppel bar retrial of the issue as to whether city park rangers are police officers under chapter 143; that there is no evidence, or, alternatively, insufficient evidence, to support the trial court's finding that the appellees have status under chapter 143 of the Texas Local Government Code; and that the officers are not police officers within the meaning of chapter 143 as a matter of law.

We reverse and render judgment that the appellees take nothing by their suit because the appellees, as a matter of law, are not police officers within the meaning of chapter 143.

■ The City argues in point of error number three that as a matter of law the appellees are not police officers within the meaning of chapter 143 of the Texas Local Government Code because they are park rangers and not officers of the Fort Worth Police Department. The appellees sought a declaratory judgment that they are police officers within the meaning of chapter 143.

This court previously determined that park rangers of the City of Fort Worth are not "policemen" as defined by TEX.REV.CIV. STAT.ANN. art. 1269m, § 2,[1] and are therefore not entitled to the same civil service protection as members of the Fort Worth Police Department. *City of Fort Worth v. Hernandez*, 608 S.W.2d 826, 827 (Tex.Civ. App.—Fort Worth 1980), *writ ref'd n.r.e. per curiam*, 617 S.W.2d 923 (Tex.1981).

The appellees contend that they are police officers as defined by Texas Local Government Code section 143.003(5), enacted since our opinion in *Hernandez*, so that *Hernandez* is no longer applicable.

Prior to 1985, "policeman," as defined in article 1269m, referred to a member of the police department who met certain requirements. The definition was amended in 1985 to include any member of the police department "or other peace officer" who met the same requirements.[2]

In 1987, the definition of "policeman" contained in article 1269m was codified, in a nonsubstantive revision process, into section 143.003(5) of the Texas Local Government Code. *See* TEX.LOC.GOV'T CODE ANN. § 143.003(5) (Vernon 1988). That section defines a "police officer" as "a member of a police department or other peace officer who was appointed in substantial compliance with this chapter or who is entitled to civil service status under Section 143.005, 143.084, or 143.103." *Id.*

The appellees urge that since they are peace officers appointed to their positions in substantial compliance with the provisions of the chapter, they are "police officers" as defined by the Code, and are therefore entitled to the same civil service protection as members of the Fort Worth Police Department.

1. Act of May 15, 1947, 50th Leg., R.S., ch. 325, § 2, 1947 Tex.Gen.Laws 550, 551, *amended by* Act of May 23, 1957, 55th Leg., R.S., ch. 391, § 1, 1957 Tex.Gen.Laws 1171, 1171, *repealed by* Act of May 1, 1987, 70th Leg., R.S., ch. 149, § 49(1), 1987 Tex.Gen.Laws 707, 1306–07.

2. *See* Act of May 27, 1985, 69th Leg., R.S., ch. 958, § 21, 1985 Tex.Gen.Laws 3227, 3240–41.

■ Assuming that the evidence shows that they are in fact peace officers appointed in substantial compliance with the relevant provisions of the chapter, a reading of the unambiguous statute would appear to support the appellees' position. However, in construing statutes we are not limited to a reading of the statute's unambiguous language.

Section 311.023 of the Texas Government Code provides that in construing a statute, whether or not the statute is considered ambiguous on its face, a court may consider, among other matters, the legislative history of the statute. TEX.GOV'T CODE ANN. § 311.023 (Vernon 1988). The City has brought us the legislative history of the 1985 amendment of the definition of "policeman" in article 1269m. It is apparent from that history that the purpose of the amendment was to make the definition of "policeman" broad enough to include park rangers and others in the City of Houston who, through amendment of a different portion of the statute, were being given civil service protection equivalent to members of the Houston Police Department. The appellees have not presented any legislative history that differs from that construction of the statute. As we have noted, the definition of "police officer" at section 143.003(5) of the Local Government Code is merely a codification of the definition of "policeman" in article 1269m without any substantive change. *See* TEX. LOC.GOV'T CODE ANN. § 1.001 (Vernon 1988).

Because we know through our examination of the legislative history that the legislature has never amended the statute to include park rangers in cities of the size of the City of Fort Worth within the definition of "police officer," we hold that the appellees as a matter of law are not police officers as defined by section 143.003(5).

■ The appellees insist that the provisions of section 143.103(a) of the Texas Local Government Code, which confers civil service status under the chapter to certain park police officers, is applicable to them even though Fort Worth's population is less than 1.5 million. *See id.* § 143.103(a).

As noted by the appellees, section 143.-101(a) of the Texas Local Government Code states that "[e]xcept as otherwise provided, this subchapter applies only to a municipality with a population of 1.5 million or more." *Id.* § 143.101(a). Section 143.103(a) is located within that subchapter.

The appellees assert that section 143.-103(a) is nonetheless applicable to them because the reference to section 143.103 in the definition of "police officer" in section 143.-003(5) falls within the provision "[e]xcept as otherwise provided" so that the population requirement of 1.5 million or more is inapplicable. Inasmuch as we have held that park police in cities of less than 1.5 million are not included within the definition of "police officer" in section 143.003(5), it follows that that section makes no provision that would indicate that the population requirement is inapplicable to the appellees.

We sustain point of error number three. In view of our determination of point of error number three, we need not determine the remainder of the City's points of error.

We reverse and render judgment that the appellees take nothing by their suit, with all costs charged to the appellees.

FARRAR, Justice, concurring.

I agree with the majority opinion, and write this concurring opinion in support of the holding of the majority.

We, as an appellate court, have the authority to examine legislative history of a relevant code provision even if it has not been presented to the trial court. *See Boykin v. State,* 818 S.W.2d 782 (Tex.Crim.App.1991); *Dillehey v. State,* 815 S.W.2d 623 (Tex.Crim. App.1991); *Harris County Dist. Attorney's Office v. J.T.S.,* 807 S.W.2d 572 (Tex.1991); *Studer v. State,* 799 S.W.2d 263 (Tex.Crim. App.1990). In *Dillehey,* Justice Miller attached an appendix to his majority opinion and explained how a court should do legislative history research, noting:

We note that the Court of Appeals did no research into the legislative history of the bills that culminated in this amendment to the code of criminal procedure. Since it may not be necessary or appropri-

ate to do such research in every case, we are not chiding the court of appeals here. However hindsight teaches us that this was an appropriate case in which to do so.

A legislative history can be researched at the state library on the second floor of the Capitol. Obtaining the legislative history can be accomplished by some or all of the steps illustrated in Appendix A.

*Dillehey,* 815 S.W.2d at 624 n. 2. Appellant has presented us with the legislative materials as an appendix to a brief, and appellees have not disputed the accuracy of that material.

As to the merits of the parties' arguments that "park police" are or are not intended to be covered by the Civil Service Act, the short answer of "no, they are not" is plain from this court's prior opinion in *City of Fort Worth v. Hernandez,* 608 S.W.2d 826 (Tex. Civ.App.—Fort Worth 1980), *writ ref'd n.r.e. per curiam,* 617 S.W.2d 923 (Tex.1981), as well as the legislative history of the amendments to Tex.Loc.Gov't Code Ann. § 143.-003(5) (Vernon 1988). Appellees take the position that the definition of "policeman" was changed in 1987 when it was codified into the Texas Local Government Code to include "other peace officers." Appellees' position is patently incorrect. That change in the scope of the Civil Service Act was made in 1985, and the 1987 codification was only nonsubstantive codification of prior law. *See Lee v. City of Houston,* 807 S.W.2d 290, 291 n. 1 (Tex.1991). Appellees also assert that the change from "policeman" to "police officer" in the 1987 code was an "essential term" change. Again, the "Revisor's Report," dated February 1987, from the Legislative Council which drafted the Local Government Code states it was a *nonsubstantive* revision. The Revisor's Note states: "For the purposes of consistency, the revised law substitutes the terms 'fire fighter' and 'police officer' for the source law terms 'fireman,' 'firemen,' 'policeman,' and 'policemen.'" Tex.Loc.Gov't Code Ann. § 143.003 revisor's note (Vernon 1988). It seems logical that the code drafters, in changing to the gender neutral term "police officer," were merely recognizing the fact that not all police officers are males.

That particular change in definition does not materially alter our holding in *Hernandez,* especially as our holding in that case turned not on whether the parties were "policemen" within the police department, but concentrated instead on whether the men were appointed to their positions of authority "in substantial compliance with" the Act. *See Hernandez,* 608 S.W.2d at 827–28.

The exact scope of the Civil Service Act has been the source of much litigation and speculation.

> The purpose of the [Civil Service] Act, as stated in section 143.001, is "to secure efficient fire and police departments composed of capable personnel who are free from political influence and who have permanent employment tenure as public servants." To that end, the Act requires the city council, or other legislative body, to provide by ordinance for the classification of all fire fighters and police officers; that is, to place all such officers within the protection of a civil service system. Section 143.021. The proper boundaries of that system, however, are unclear.

*Lee,* 807 S.W.2d at 291 (emphasis added). The original scope of the Act defined policeman broadly to include "any member of the Police Department who draws compensation for his services as a member of said Department." Act of May 15, 1947, 50th Leg., R.S., ch. 325, § 2, 1947 Tex.Gen.Laws 550, 551. Courts considered all employees of the police department to be covered by the Act. The Texas Legislature then restrictively amended the definition of "policeman":

> By the term "Policeman" is meant any member of the Police Department appointed to such position in substantial compliance with the provisions of Section 9, 10 and 11 of this Act....

Act of May 23, 1957, 55th Leg., R.S., ch. 391, § 1, 1957 Tex.Gen.Laws 1171, 1171; *see also Lee,* 807 S.W.2d at 291–92, 298. The focus of the Act was to apply the Act to members of the police department, and only *some members of the police department.* The definition, as previously stated, was amended again in 1985, without providing the courts with much clarification on the intended scope of

the Act.[1] The supreme court has pointed out:

> We note that the Act, as a whole, has not suffered from legislative inattention. Since the adoption of the new definition of "policeman," the legislature has amended the statute at least thirty-two times. In none of those instances, however, did the legislature address the opaqueness of the statute's most basic provision. Until the legislature clearly defines the scope of the Fire Fighters' and Police Officers' Civil Service System, courts will be left to apply the vague standard we discern today to increasingly complex bureaucracies.

*Lee*, 807 S.W.2d at 294 n. 9 (emphasis added). This statement seems to me to be additional proof that this is an ambiguous statute, and a situation in which it is most appropriate for us to examine the legislative history materials.

Appellees assert that section 143.103(a) of the Act, which refers to park police, applies to all cities having park police because section 143.003(5) refers to 143.103(a). Such construction ignores the limiting language of subchapter G of the Act, which clearly states it applies only to cities with a population of 1.5 million or more.

For example, subchapter G, the subchapter in which section 143.103 is located, is titled: "PROVISIONS APPLICABLE TO MUNICIPALITY WITH POPULATION OF 1.5 MILLION OR MORE AND CERTAIN OTHER MUNICIPALITIES." TEX. LOC.GOV'T CODE ANN. ch. 143(G) (Vernon 1988). Further, TEX.LOC.GOV'T CODE ANN. § 143.101 (Vernon 1988) specifies:

> (a) Except as otherwise provided, this subchapter applies only to a municipality with a population of 1.5 million or more.

*Id.* For this reason, only peace officers employed by a municipality with such a large population are *entitled* to civil service status. *Compare* TEX.LOC.GOV'T CODE ANN. § 143.101 *with* § 143.103. Yet, even if it is unclear from the statute whether peace officers in smaller municipalities are entitled to civil service status, the majority's construction of sections 143.101 and 143.103 is in accordance with the legislative history of Senate Bill 540. The bill analysis prepared by its author, Senator John Whitmire of Houston,[2] states that the bill is intended to implement legislation passed in 1983 but ignored by the City of Houston. SENATE INTERGOVERNMENTAL RELATIONS COMM., BILL ANALYSIS, Tex.S.B. 540, 69th Leg., R.S. (1985). The legislators meant to include under the Act specialized law enforcement officers of the City of Houston under the 1983 legislation. *Id.* Because that legislation failed to accomplish that purpose, the Act was to be amended again in 1985 to expressly cover Houston's peace officers serving in specialized police divisions. *Id.; see also Lee*, 807 S.W.2d at 293 n. 4. It is clear from the House Study Group bill analysis and taped hearings that the bill was intended to apply to *only* the City of Houston. *See* HOUSE STUDY GROUP, BILL ANALYSIS, Tex.S.B. 540, 69th Leg., R.S. (1985); *see also* Hearings on Tex.H.B. 914 Before the House Urban Affairs Comm., 69th Leg., R.S. (Mar. 27, 1985) (tapes available from House Committee Coordinator). The legislature believed in 1985 that it needed to adopt S.B. 540 in order to extend the scope of the Act to particularly include Houston's specialized police units. Clearly the legislature does not believe the scope of the Act applies to all *other* park police in the state.

Additionally, the supreme.court has stated that the purpose of S.B. 540 was to amend the scope of the Act "to include specialized police forces, such as park police, airport police, and city marshals, in any city having a population of 1,500,000 or more." *Lee*, 807 S.W.2d at 293. Fort Worth does not have a population of 1.5 million. If adding the words "or other peace officer" is sufficient to include under the scope of the Act any park police or other personnel who are not police officers no matter what the city's population, then all of subchapter G would be superflu-

---

1. The Act now requires that those entitled to its protection be appointed in substantial compliance with the Act—apparently meaning the Act as a whole, not simply former sections 9, 10, and 11.

2. *See* 69th Leg., R.S., 1985 Tex.Gen.Laws 360, listing members of the Texas Senate for the 69th Legislative Session.

ous, and the legislature would have "done a vain thing" in enacting it.

It is in support of the position taken by the majority that I offer this concurring opinion. These reasons for reversing and rendering in favor of the appellant having been stated, I concur in the majority's opinion.