Austin v. Circle C 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-95-00164-CV







City of Austin, Save Our Springs Legal Defense Fund Inc.,


and Al St. Louis, Appellants



v.



Jerry J. Quick, Kaira G. Quick, John M. Bryant, Ruth E. Bryant, Joe Cox,


Dolores Cox, Florence Turck, and Circle C Land Corp., Appellees







FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT


NO. 92-0637, HONORABLE JOHN FORBIS, JUDGE PRESIDING







 Appellees sued appellant City of Austin (the "City"), challenging the validity of the
water pollution control measure known as the Save our Springs Ordinance (the "Ordinance"). 
Appellants/Intervenors Save Our Springs Legal Defense Fund, Inc. and Al St. Louis (collectively,
the "Coalition") unsuccessfully attempted to intervene in the suit. The trial court submitted
certain issues to the jury and, after making certain conclusions of law, rendered judgment striking
down the Ordinance as invalid. We will affirm the trial court's judgment, as modified, in part,
and will reverse in part and render judgment that the Ordinance is valid.



BACKGROUND


 Through the initiative and referendum process, the Save Our Springs Coalition
Steering Committee, a group of Austinites interested in environmental issues, placed the
Ordinance on the Austin municipal ballot for a local referendum election. On August 8, 1992,
the citizenry of Austin overwhelmingly voted to approve the Ordinance. After it was approved
by the voters, the Austin City Council enacted the Ordinance (1) and integrated it into the City Code. 
The Ordinance became effective August 10, 1992. 

 As stated in its Declaration of Intent, the Ordinance seeks to insure water quality
control in Barton Creek, Barton Springs, and the Barton Springs Edwards Aquifer. The
Ordinance's provisions do not apply city-wide, but only to those areas containing watersheds
contributing to Barton Springs. The Ordinance contains the following provisions pertinent to this
appeal: In order to insure water quality control of the Barton Creek watershed, the Ordinance
limits the percentage of a land tract devoted to "impervious," i.e., non-porous cover. The
Ordinance also requires that new developments be set back from streams and not contribute to an
increase in the amount of pollution constituents commonly found in urban rainfall runoff water. 
The Ordinance prohibits construction in the "critical water quality zone" of the Barton Creek
watershed. The Ordinance provides for no waivers or exceptions except in very limited
circumstances when necessary to avoid conflicting with state and federal laws. Finally, because
the City has jurisdiction to enact ordinances affecting its extraterritorial jurisdiction ("ETJ"), the
Ordinance affects property outside the Austin city limits, including areas of Hays County.

 Appellees own land in Hays County and claim its value has been adversely affected
by the Ordinance. Appellees sued the City in Hays County, seeking a declaratory judgment that
the Ordinance was void because it was illegally enacted. Additionally, they challenged the
validity of the ordinance pursuant to section 26.177(d) of the Texas Water Code. Tex. Water
Code Ann. § 26.177(d) (West Supp. 1996) (authorizing party aggrieved by water pollution control
ordinance to appeal to district court to review whether ordinance is invalid, arbitrary,
unreasonable, inefficient, or ineffective).

 The Coalition moved to intervene in the suit, claiming that the City was incapable
of advocating their interests due to previous hostilities over the SOS Ordinance. See, e.g., City
Council of Austin v. Save Our Springs Coalition, 828 S.W.2d 340 (Tex. App.--Austin 1992, no
writ) (Coalition sued City Council to force election on SOS Ordinance).

 After having submitted several special issues to the jury, the court rendered
judgment that the Ordinance was null and void. Additionally, within the final judgment, the trial
court incorporated several conclusions of law which, in part, adopted several of the jury findings
on the special issues. The court below concluded that (1) the Ordinance was void under Water
Code section 26.177(d) because it was unreasonable, arbitrary, and inefficient; (2) the Ordinance
was void because it was enacted without a public hearing in violation of section 212.002 of the
Texas Local Government Code. Tex. Loc. Gov't Code Ann. § 212.002 (West 1988); (3) the
Ordinance was void because it regulated the number, use, and size of buildings in the City's
extraterritorial jurisdiction in violation of section 212.003 of the Texas Local Government Code. 
Id. § 212.003; (4) the Ordinance becomes effective, if at all, only after the Texas Natural
Resources Conservation Commission ("TNRCC") approves it; and (5) that any permit required
by Circle C Land Corp. for the development of its property shall be subject only to the law in
effect at the time the original application for preliminary subdivision approval was filed. 
Furthermore, the court awarded appellees attorney's fees. Finally, all relief prayed for by any
other party, if not expressly granted, was denied by the trial court.



DISCUSSION


Intervention by the Coalition


 Before trial, appellees successfully moved to strike the Coalition's plea in
intervention. In their first point of error, the Coalition claims that the trial court abused its
discretion in striking its motion to intervene.

 Texas Rule of Civil Procedure 60 allows parties to intervene subject to being
stricken by the court for good cause. Tex. R. Civ. P. 60. The party opposed to the intervention
has the burden of challenging it by a motion to strike. Guaranty Fed. Savs. Bank v. Horseshoe
Operating Co., 793 S.W.2d 652, 657 (Tex. 1990). Once a motion to strike has been filed, the
trial court has broad discretion in its decision to strike the plea in intervention. The trial court
abuses its discretion when (1) the intervenor, in its own name, could have either brought, or
defended and defeated, the same action, or any part thereof; (2) the intervention will not
complicate the case by an excessive multiplication of the issues; and (3) the intervention is almost
essential to effectively protect the intervenor's interest. Id.

 Addressing the third standard above, the Coalition argues that the City cannot
effectively protect its interest because, in the past, the City opposed the Ordinance. Notably, the
Coalition does not argue that the Ordinance, as enacted by the City, does not conform to the
version ratified by the voters. Instead, the Coalition argues that past hostilities with the City
demonstrate that it is presumably incapable of protecting the Coalition's interests at trial.

 While the Coalition and the City may have disagreed in the past, the relevant
inquiry is whether the City could have effectively represented the Coalition's interests at the time
of trial. The trial court was not required to presume that past disagreements rendered the City,
per se, an ineffective advocate for the Coalition. Therefore, we conclude that the trial court did
not abuse its discretion in striking the Coalition's plea in intervention. We overrule the
Coalition's first point of error.

 The Coalition also raises numerous points of error challenging the trial court's
judgment on the merits. Generally, only parties of record may exercise the right to appeal. 
Continental Cas. Co. v. Huizar, 740 S.W.2d 429, 430 (Tex. 1987). The trial court struck the
Coalition's plea in intervention in a pretrial ruling on March 15, 1993. Therefore, the Coalition
never became a proper party to the trial and cannot attack the final judgment on appeal. See
Central Mut. Ins. Co. v. Dunker, 799 S.W.2d 334, 336 (Tex. App.--Houston [14th Dist.] 1990,
writ denied). Accordingly, we dismiss the Coalition's remaining points of error.



The City


Separation of Powers

 In its first point of error, the City argues that the trial court erred in rendering
judgment that the Ordinance was unreasonable, arbitrary, and inefficient pursuant to section
26.177(d) of the Texas Water Code. Tex. Water Code Ann. § 26.177(d) (West Supp. 1996). 
Section 26.177(d) provides in pertinent part:



Any person affected by any . . . ordinance relating to water pollution control and
abatement outside the corporate city limits of such city adopted pursuant to this
section or any other statutory authorization may appeal such action to the [Texas
Natural Resource Conservation Commission] or district court . . . . The issue on
appeal is whether the action or program is invalid, arbitrary, unreasonable,
inefficient, or ineffective in its attempt to control water quality. The Commission
or district court may overturn or modify the action of the city . . . .



Id. The City contends that, in the instant cause, section 26.177(d) allowed the court to conduct
a de novo review of the policy considerations behind a legislative act. To this extent, the City
argues that the statute runs afoul of the separation of powers doctrine and is therefore
unconstitutional.

 Before addressing the statute's constitutionality, we shall address appellees' claim
that the City has no standing to raise such an argument. Citing McGregor v. Clawson, 506
S.W.2d 922 (Tex. Civ. App.--Waco 1974, no writ), appellees argue that a municipality, created
by the Legislature, has no constitutional rights that it can invoke against its creator. See id. at
929. Furthermore, citing Boyett v. Clavert, 467 S.W.2d 205 (Tex. Civ. App.--Austin 1971, writ
ref'd n.r.e.), cert. dism'd, 405 U.S. 1035 (1972), appellees argue that the City cannot litigate the
constitutional rights of others. See id. at 210.

 The cases upon which appellees rely base their rationale on federal cases holding
that cities cannot raise federal constitutional claims against the State. See, e.g., Williams v.
Mayor & City of Baltimore, 289 U.S. 36, 45-48 (1933); City of Trenton v. State of New Jersey,
262 U.S. 182, 191 (1923). In fact, the U.S. Supreme Court in Williams stated that, while a city
could not invoke a protection of the federal constitution, it could "be heard to complain of the
constitution of the state. Their standing for that purpose, at least in the state courts, is a question
of state practice." Williams, 289 U.S. at 47-48.

 The Texas Supreme Court has addressed a situation in which a city argued that a
state statute offended the separation of powers doctrine. See Davis v. City of Lubbock, 326
S.W.2d 699, 711-712 (Tex. 1959). In Davis, a statute authorized municipalities to designate
particular "slum" areas as urban redevelopment zones. The statute also expressly provided for
judicial de novo review of the city's designation of a redevelopment area. The City of Lubbock
argued that the statute unconstitutionally permitted the judiciary to review, de novo, a legislative
function. The supreme court agreed, holding that the statute offended the separation of powers
doctrine. Given Davis as precedent, we cannot agree with appellees that cities cannot challenge
statutes on separation of powers grounds. Therefore, we shall address the merits of the City's
claim.

 Article II, section 1 of the Texas Constitution divides the functions of government
as follows:



[T]hree distinct departments, each of which shall be codified to a separate body of
magistracy, to wit: Those which are Legislative to one; those which are Executive
to another, and those which are Judicial to another; and no persons, or collection
of persons, being of one of these departments, shall exercise the power properly
attached to either of the others . . . .



Tex. Const. art. II, §  1. When the Legislature delegates a legislative function to a subordinate
body, such as a municipality or an administrative agency, the delegated function is limited only
by the Constitution and is not subject to de novo review by any other branch of government. See
id.; Davis, 326 S.W.2d at 711-12; Texas Vending Comm'n v. Headquarters Corp., 505 S.W.2d
402, 404 (Tex. App.--Austin 1974, writ ref'd n.r.e.). Therefore, if (1) the Ordinance is the
product of a legislative function, and (2) section 26.177(d) provides for de novo judicial review
of the Ordinance, then section 26.177(d) is unconstitutional. See Texas Vending Comm'n, 505
S.W.2d at 404.

 The Ordinance was clearly adopted pursuant to the delegation of a legislative
function. A government function is legislative, and not judicial, when it "looks to the future and
changes existing conditions by making a new rule, to be applied thereafter to all or part of those
subject to its power." Prentis v. Atlantic Coast Line Co., 211 U.S. 210, 226 (1908). Therefore,
the Ordinance clearly is legislative because it regulates future behavior rather than adjudicating
past disputes. The decision of how and whether to protect watersheds is one of public policy
because it involves discretionary evaluations of the public health, safety, and welfare. See Davis,
326 S.W.2d at 714. Furthermore, "[t]he enactment by a municipal corporation of an ordinance
is a legislative function . . . upon which the Legislature has seen fit to confer part of the
government power reposed in it." City of Grand Prairie v. Turner, 515 S.W.2d 19, 25 (Tex. Civ.
App.--Dallas 1974, writ ref'd n.r.e.).

 Given that enactment of the Ordinance was a legislative function, we must next
determine whether section 26.177(d) provides for de novo judicial review. In Southern Canal Co.
v. State Board. of Water Engineers, 318 S.W.2d 619 (Tex. 1958), the supreme court noted that
the "[p]ower to try a case de novo vests a court with full power to determine the issues and rights
of all parties involved, and to try the case as if the suit had been filed originally in that court." 
Id. at 622. In Southern Canal, the supreme court was particularly disturbed at the prospect of
submitting to the jury the question, "Do you find from a preponderance of the evidence that the
Board's order is reasonable?" Id. at 624 (emphasis added). The court found it "utterly
incongruous" for a jury to decide an agency order's reasonableness by a preponderance of the
evidence standard. Id.; see also Gerst v. Nixon, 411 S.W.2d 350, 353-54 (Tex. 1967).

 The instant cause revisits those very same fears the supreme court had in Southern
Canal. (2) Here, the jury was asked whether, by a preponderance of the evidence, they thought the
Ordinance was unreasonable, arbitrary, and inefficient. The jury answered affirmatively, and the
trial court rendered judgment, incorporating the jury's verdict therein. Therefore, the trial court
erred in conducting a de novo review of a legislative function.

 Having concluded that the court erred in conducting a de novo review of the public
policy considerations of the Ordinance, we must now consider whether the statute itself authorized
such a de novo review. Section 26.177(d) describes the standard of review for an appeal:



The issue on appeal is whether the action or program is invalid, arbitrary,
unreasonable, inefficient, or ineffective in its attempt to control water quality. The
commission or district court may overturn or modify the action of the city.



Tex. Water Code Ann. § 26.177(d) (West Supp. 1996) (emphasis added).

 The statute authorizes a court to determine whether a municipal ordinance is
"reasonable" or "arbitrary." The judiciary often reviews statutes for constitutional
unreasonableness. Substantive due process demands that ordinances shall not be "arbitrary,"
"unreasonable," or "capricious." See, e.g., Chandler v. Guiterrez, 906 S.W.2d 195, 202 (Tex.
App.--Austin 1995, writ denied). When reviewing for constitutional unreasonableness, the
judiciary must give great deference to the legislative action and should not substitute its own
public policy judgments for that of the enacting body. Smith v. Davis, 426 S.W.2d 827, 831
(Tex. 1968) (mere difference of opinion, where reasonable minds could differ, not sufficient basis
for striking down legislation as unconstitutional).

 The instant statute, however, authorizes judicial review that extends far beyond
examining constitutional infirmities. Section 26.177(d) permits a court to review whether an
ordinance is efficient and/or effective. Such a determination is one of public policy, and therefore
demonstrative of de novo review. See Davis, 326 S.W.2d at 713-14.

 Furthermore, the statute by its express terms authorizes the district court to both
render void or modify the action under review. Such authority demonstrates the court's ability
to substitute its own judgment for that of the body below; again, such power points towards de
novo review. See Southern Canal, 318 S.W.2d at 622. Accordingly, we conclude that section
26.177(d) of the Water Code unconstitutionally authorizes a reviewing body to review de novo
the public policy considerations behind a legislative act. See Public Util. Comm'n v. GTE-Southwest, Inc. 833 S.W.2d 153, 174-75 (Tex. App.--Austin, 1992), rev'd in part on other
grounds, 901 S.W.2d 401 (Tex. 1995) (typically, one branch of government may not modify
action of another branch without offending separation of powers doctrine). We sustain the City's
first point of error.



Statutory Authority to Enact the Ordinance

 In point of error three, the City complains that the Court erred in submitting to the
jury whether the Ordinance was part of a water pollution control and abatement program. The
jury answered that the Ordinance was not part of such a program. In point of error four, the City
complains that the jury's answer is supported by neither legally nor factually sufficient evidence.

 Tracking the language of section 26.177(b) of the Water Code the trial court
submitted the following question to the jury:



Do you find that the SOS Ordinance is not part of a water pollution control and
abatement program of the City of Austin?


You are instructed that a water pollution control and abatement program must
include the following two features:


 i. the program must encompass the entire City of Austin; and


ii. the program must include only such territory within the City of Austin's
extraterritorial jurisdiction as is, in the City's reasonable judgment, necessary
in order to enable the City of Austin to achieve its reasonable objectives for the
area within its territorial jurisdiction.



 The jury responded that the Ordinance was not part of a water pollution and
abatement program. The City argues that the court erred in permitting the jury to construe section
26.177 of the Water Code because the construction of a statute is a question of law for the court,
and not a question of fact for the jury. See City of Dallas v. Cornerstone Bank, N.A., 879 S.W.2d
264, 269 (Tex. App.--Dallas 1994, no writ).

 The trial court's final judgment does not specifically refer to the jury's answer to
this question. Presumably, the answer is significant because if the City did not have the authority
to pass the Ordinance under section 26.177 of the Water Code, then perhaps it had no authority
to pass the Ordinance at all. While the final judgment below strikes down the Ordinance as "void
ab initio," the court below did not specifically justify this conclusion on the City's inability to pass
the statute under section 26.177.

 In any event, regardless of whether the City had the authority to enact the
Ordinance under section 26.177 of the Water Code, the City had such authority under section
401.002 of the Local Government Code, which provides:


(b) A home-rule municipality may provide for the protection of and may police
any watersheds.


(c) The authority granted under this section may be exercised inside or outside the
municipality's boundaries.



Tex. Loc. Gov't Code Ann. § 401.002 (West 1988).

 By its express terms, the statute authorizes cities to enact ordinances to protect
watersheds such as the one in the instant cause. There is no case law interpreting the statute as
to this precise issue. However, an Attorney General's Opinion has construed the predecessor
statute to authorize cities to regulate discharge into watersheds located both within their
boundaries and extraterritorial jurisdiction. Op. Tex. Att'y Gen. No. JM-226 (1984). Given the
statute's plain meaning and the Attorney General's persuasive opinion, we conclude that the City
had the authority to enact the Ordinance pursuant to section 401.002 of the Local Government
Code. Irrespective of whether the City had the authority to enact the Ordinance pursuant to
section 26.177 of the Water Code, it did have the authority to enact the Ordinance pursuant to
section 401.002 of the Local Government Code. Therefore, the trial court's conclusion that the
Ordinance is not part of a water pollution and abatement program as contemplated by section
26.177 of the Water Code is irrelevant to the issues on appeal. Accordingly, we need not decide
whether the trial court erred in making such a conclusion.



Ordinance's Effect Pending TNRCC Approval

 In its second point of error, the City argues that the trial court erred in rendering
judgment that the Ordinance, while not void for want of TNRCC approval, can only become
effective and enforceable if and when approved by the TNRCC. Section 26.177(a) of the Water
Code directs municipalities with populations in excess of five thousand to establish water pollution
control and abatement programs. Section 26.177(c) provides:



The water pollution control and abatement program required by Subsections (a) and
(b) of this section (3) must be submitted to the [TNRCC] for review and approval. 
The [TNRCC] may adopt rules providing the criteria for the establishment of those
programs and the review and approval of those programs.



Appellees argue that subsection (c) requires TNRCC approval before the Ordinance becomes
effective.

 Home-rule cities, such as Austin, derive their power from article XI, section 5 of
the Texas Constitution. See Tex. Const. art. XI, § 5; Lower Colorado River Auth. v. City of San
Marcos, 523 S.W.2d 641, 643 (Tex. 1975) ("LCRA"). Therefore, a home-rule city looks to the
Legislature not for grants of authority, but for limitations on their powers. LCRA, 523 S.W.2d
at 643; Barnett v. City of Plainview, 848 S.W.2d 334, 338 (Tex. App.--Amarillo 1993, no writ). 
The Legislature may limit the power of home rule cities. However, such a limitation must appear
with "unmistaken clarity." LCRA, 523 S.W.2d at 645.

 The City of Austin's charter provides when Ordinances become effective. See
Austin City Charter art. II, § 12. Therefore, for the Legislature, in Water Code section
26.177(c), to have limited the City's authority to set the effective date of the Ordinance, it must
have done so with "unmistaken clarity." See LCRA, 523 S.W.2d at 645.

 While section 26.177(c) states that a water pollution or abatement program must
be submitted to the TNRCC for review and approval, the statute is silent as to whether the
program is effective pending approval. Therefore, we must determine whether the Legislature
enacted section 26.177(c) intending to render local water quality control ordinances void pending
TNRCC approval.

 The primary duty of any court in construing a statute is to effectuate the intent of
the Legislature. Seay v. Hall, 677 S.W.2d 19, 25 (Tex. 1984). The intent should be determined
by examining the language used in the statute. Jones v. Del Anderson & Assocs., 539 S.W.2d
348, 350 (Tex. 1976). A statute should be read as if every word, phrase, and expression were
deliberately chosen for a purpose. State v. Office of Pub. Util. Counsel, 849 S.W.2d 864, 868
(Tex. App.--Austin 1993), writ dism'd improvidently granted, 866 S.W.2d 209 (Tex. 1993). 
Moreover, every word excluded from a statute must be presumed to have been excluded for a
purpose. Cameron v. Terrell & Garrett, 618 S.W.2d 535, 540 (Tex. 1981). When the
Legislature has carefully employed a term in one section of a statute, and has excluded it in
another, it should not be implied where excluded. Smith v. Baldwin, 611 S.W.2d 611, 616 (Tex.
1980).

 In arguing that the Ordinance is effective pending TNRCC approval, the City
contrasts the language of section 26.177(c) to other sections of the Water Code where the
Legislature expressly provided that local acts were ineffective until approved by the TNRCC. As
evidenced by other sections of the Water Code, the Legislature is well-versed in drafting statutes
to prevent certain acts from taking effect until approved by the TNRCC. For example, Water
Code section 11.121 provides that any project for "the storage, taking, or diversion of water"
shall not begin "without first obtaining a permit from the commission." Likewise, Water Code
section 26.032, since repealed, (4) gave counties the authority to regulate sewage facilities. In
contrast to section 26.177(c), section 26.032(c) expressly stated that any local ordinance would
remain ineffective pending TNRCC approval: "Before the order, resolution, or other rule
becomes effective, the county shall submit it to the Commission and obtain the Commissioner's
written approval." Act of June 2, 1971, 62d Leg., R.S., ch. 613, § 21.084(c), 1971 Tex. Gen.
Laws 1976, repealed by Act of June 17, 1987, 70th Leg., R.S., ch. 406, § 2, 1987 Tex. Gen.
Laws 1938. 

 The Legislature chose not to include in section 26.177(c) any such express
provision limiting the effectiveness and enforceability of a city's water pollution program pending
TNRCC approval. Every word excluded from a statute must be presumed to have been excluded
for a purpose. Cameron, 618 S.W.2d at 540. Therefore, we conclude that section 26.177(c) does
not mandate that a municipal water pollution and abatement program can only become effective
and enforceable until approved by the TNRCC. Any intent to render such ordinances void
pending TNRCC approval has not been made with "unmistaken clarity." See LCRA, 523 S.W.2d
at 645. In concluding otherwise, the trial court erred.

 In any event, section 26.177(c) of the Water Code, which requires water pollution
and abatement programs to be submitted to the TNRCC for review and approval, only applies to
programs enacted pursuant to Texas Water Code sections 26.177(a) and (b). In our discussion
under point of error three, we concluded that there exists independent statutory authority apart
from section 26.177 of the Water Code to enact the Ordinance. Therefore, section 26.177(c)'s
requirements of TNRCC approval are irrelevant to the issues on appeal. We sustain the City's
second point of error.



Applicability of Zoning Statutes

 In points of error six through ten, the City complains that the trial court erred in
its conclusions regarding the applicability of Local Government Code sections 212.002 and
212.003 to the Ordinance.

 Local Government Code section 212.002 provides:



After a public hearing, the governing body of a municipality may adopt rules
governing plats and subdivisions of land within the municipality's jurisdiction to
promote the health, safety, morals, or general welfare of the municipality and the
safe, orderly, and healthful development of the municipality.



Tex. Loc. Gov't Code Ann. § 212.002 (West 1988). 

 Local Government Code section 212.003 provides in pertinent part:



(a) The governing body of a municipality by ordinance may extend to the
extraterritorial jurisdiction of the municipality the application of municipal
ordinances adopted under Section 212.002 and other municipal ordinances
relating to access to public roads. However, unless otherwise authorized by
state law, in its extraterritorial jurisdiction a municipality shall not regulate:


 (1) the use of any building or property for business, industrial, residential, or
other purposes;


 (2) the bulk, height, or number of buildings constructed on a particular tract
of land;


 (3) the size of a building that can be constructed on a particular tract of land,
including without limitation any restriction on the ratio of building floor
space to the land square footage; or


 (4) the number of residential units that can be built per acre of land.



Tex. Loc. Gov't Code Ann. § 212.003 (West Supp. 1996).

 Tracking the language of Local Government Code section 212.003(a)(1)-(4), the
trial court submitted a jury question which asked whether the Ordinance regulated certain building
specifications as enumerated in the statute. The jury answered that the Ordinance did.

 The trial court concluded that (1) Local Government Code sections 212.002 and
212.003 applied to the Ordinance; (2) the Ordinance was enacted without a public hearing in
violation of section 212.002; (3) the Ordinance regulated the development of buildings in the
City's extraterritorial jurisdiction in violation of section 212.003(a)(1)-(4); and therefore (4) the
Ordinance was void.

 In point of error six, the City argues that the trial court erred in concluding that
sections 212.002 and 212.003 apply to the Ordinance. In point of error seven, the City argues
that the court erred in concluding that the "public hearing" requirement of section 212.002
prevented the use of the initiative and referendum process to adopt the Ordinance. In point of
error eight, the City argues that the trial court erred in concluding that the clause "unless
otherwise authorized by state law" in section 212.003(a) did not excuse the Ordinance from the
prohibitions set forth in section 212.003(a)(1)-(4). In point of error nine, the City argues that the
court erred in permitting the jury to construe Local Government Code section 212.003. In point
of error ten, the City argues that the jury's answer is supported by neither legally nor factually
sufficient evidence.

 First we must determine whether sections 212.002 and 212.003 apply to the
Ordinance. The construction of a statute is a question of law for the court, and not a question of
fact for the jury. See Cornerstone Bank, N.A., 879 S.W.2d at 269. Therefore, we accord no
weight to the jury's finding and consider the issue de novo.

 The primary duty of any court in construing a statute is to effectuate the intent of
the Legislature. Seay, 677 S.W.2d at 25. The intent should be determined by examining the
language used in the statute. Jones, 539 S.W.2d at 350. A statute should be read as if every
word, phrase, and expression were deliberately chosen for a purpose. Office of Pub. Util.
Counsel, 849 S.W.2d at 868.

 In reviewing a statute, even one that is facially unambiguous, a reviewing court
may consider the legislative history of the statute. Tex. Gov't Code Ann. § 311.023(3) (West
1988); City of Fort Worth v. Harty, 862 S.W.2d 776, 778 (Tex. App.--Fort Worth 1993, writ
denied). Furthermore, an appellate court is entitled to consider the legislative history of a statute
even if the trial court did not. Ector County v. Hollmann, 901 S.W.2d 687, 688 (Tex. App.--El
Paso 1995, no writ); In re Marriage of Roach, 773 S.W.2d 28, 30 (Tex. App.--Amarillo 1989,
writ denied).

 By their express terms, sections 212.002 and 212.003 apply to ordinances that
"govern plats and subdivisions of land." Moreover, the statutes' legislative history suggests that
they concern a city's zoning authority. House Bill 3187, which amended section 212.003,
"prohibits the application of zoning regulations in ETJ areas." Committee on Urban Affairs, Bill
Analysis, Tex. H.B. 3187, 71st Leg., R.S. (1989) (emphasis added). Because Local Government
Code sections 212.002 and 212.003 apply to what are fundamentally zoning statutes, we must next
determine whether the Ordinance is a zoning statute.

 The Ordinance's Declaration of Intent states:



The people of the City declare their intent to preserve a clean and safe drinking
water supply, to prevent further degradation of the water quality in Barton Creek,
Barton Springs, and the Barton Springs Edwards Aquifer, to provide for fair,
consistent, and cost-effective administration of the City's watershed protection
ordinances, and to promote the public health, safety, and welfare. The City
recognizes that the Barton Springs Edwards Aquifer is more vulnerable to pollution
from urban development than any other major groundwater supply in Texas, and
that the measures set out in this Division are necessary to protect this irreplaceable
natural resource.



Austin City Code § 13-7-36.3 (1996). The Ordinance is a water pollution control measure. 
Unlike zoning statutes, the Ordinance's goal is not to shape urban development. Its end and aim
is to protect Austin area watersheds. Appellees maintain that while the Ordinance's ends might
contemplate water quality control, its means entail land use control. Therefore, appellees argue
that the Ordinance is subject to Local Government Code sections 212.002 and 212.003's
requirements. We disagree.

 The statutory grants of authority permitting cities to implement water pollution
control Ordinances in their ETJ do not contain the restrictions found in Local Government Code
sections 212.002 and 212.003. See Tex. Water Code Ann. § 26.177(b) (West Supp. 1996); Tex.
Loc. Gov't Code Ann. § 401.002 (West 1988). Any non-point source pollution (i.e., rainwater
runoff) control measure will, by necessity, entail some type of land use control. Therefore, if the
restrictions found in Local Government sections 212.002 and 212.003 applied to all water quality
control ordinances, such restrictions would effectively nullify a city's ability to regulate non-point
source pollution in its extraterritorial jurisdiction. We do not believe the Legislature intended
such a result. We find an Attorney General's Opinion to be instructive on this point.

 In Opinion H-802, the Attorney General was asked to consider whether the Texas
Water Quality Board could regulate non-point source pollution through, and condition non-point
source contaminant permits on, land use control measures. The Attorney General concluded that
the Board could not implement land use planning (i.e., zoning) regulations because it lacked the
statutory authority to do so. However, the Attorney General concluded that the Board could adopt
land use control measures as a means of implementing its water quality control duties. Therefore,
a water quality control measure can effect land use and still not be considered a land use measure. 
See Op. Tex. Att'y Gen. No. H-802 (1976). We find this reasoning persuasive and conclude that
the Ordinance's incidental effects on land use do not make it a rule governing plats and
subdivisions of land as contemplated by Local Government Code sections 212.002 and 212.003. 
Because the Ordinance is not a zoning statute, we hold that the provisions of Texas Local
Government Code sections 212.002 and 212.003 do not apply to the Ordinance. We sustain the
City's points of error six through ten.



Propriety of Initiative and Referendum Process

 Points of error eleven through thirteen concern the trial court's submitting the
following question to the jury:



Was the subject matter of the SOS Ordinance an improper subject for the initiative
and referendum process?


Instructions and Definitions Initiative and referendum is the process by which
citizens propose legislation to be submitted for approval by the voters in an
election. A subject is improper for the initiative and referendum process if the
voters lack sufficient information, data, and facts so as to enable them to have an
informed judgment on the subject.



 Consistent with the instruction, the City offered various pieces of evidence in order
to prove that the voters of Austin were properly informed of the Ordinance's contents. The trial
court refused to admit much of the City's evidence. The jury answered that the Ordinance was
an improper subject for the initiative and referendum process.

 In point of error eleven, the City argues that the trial court erred in submitting this
question and its accompanying instructions to the jury. In point of error twelve, the City contends
that the jury's answer is unsupported by legally and factually sufficient evidence. In point of error
thirteen, the City argues that the trial court erred in refusing to admit various pieces of evidence
demonstrating that the voters of Austin were intelligently apprised of the Ordinance's contents.

 The City contends that the trial court erred in asking the jury whether the
Ordinance's subject matter was too technical for the initiative and referendum process. Appellees
respond that a line of cases holds that certain matters are improper subjects for the initiative and
referendum process because of their complexity. See Dallas Ry. Co. v. Geller, 271 S.W. 1106,
1107 (Tex. 1925); Southwestern Bell Tel. & Tel. Co. v. Dallas, 134 S.W. 321, 323 (Tex. 1911);
Hancock v. Rouse, 437 S.W.2d 1, 4 (Tex. Civ. App.--Houston [1st Dist.] 1969, writ ref'd n.r.e.);
Hatten v. City of Houston, 373 S.W.2d 525, 540-41 (Tex. Civ. App.--Houston 1963, writ ref'd
n.r.e.); Denman v. Quin, 116 S.W.2d 783, 786 (Tex. Civ. App.--San Antonio 1938, writ ref'd).

 These cases notwithstanding, there is no common law rule that certain issues are
too complex and technical to be adopted pursuant to the initiative and referendum process. In
each of the cases the landowners cite, the legislative function was either expressly conferred on
a governmental body exclusively or a prerequisite action required by law (such as a public
hearing) had not taken place. The Supreme Court of Texas has noted this key distinction in Glass
v. Smith, 244 S.W.2d 645 (Tex. 1951):



In all Texas cases called to our attention in which it has been held that the people
of a municipality could not validly exercise a delegated legislative power through
initiative proceedings, it will be found that authority to act was expressly conferred
upon the municipal governing body exclusively, or there was some preliminary duty
such as the holding of hearings, etc., impossible of performance by the people in
an initiative proceeding, by statute or charter made a prerequisite to the exercise
of the legislative power.



Id. at 653 (emphasis added).

 In the instant cause, we have already determined that no public hearing was
required as a prerequisite to enact the Ordinance. Moreover, there is no law, state or local, which
reserves the adoption of watershed pollution control ordinances exclusively to a governmental
body such as the City Council. Therefore, the trial court erred in asking the jury whether the
Ordinance's subject matter was too technical for the initiative and referendum process. We
sustain point of error eleven. Because the court should not have submitted this issue to the jury,
we need not reach the merits of points of error twelve and thirteen.



Independent, Unchallenged Grounds to Support the Trial Court's Judgment

 Appellees assert that there exist independent grounds, unchallenged on appeal, to
support the court's judgment finding that the Ordinance is null and void. Therefore, appellees
argue that, even if the City were to prevail on all of its points of error challenging the trial court's
judgment, the judgment could still be affirmed on the unchallenged grounds. Specifically,
appellees refer to three challenges to the Ordinance which they allege the City has not refuted on
appeal.

 First, appellees argue that insofar as the Ordinance shortens the duration for
previously approved permit applications, the Ordinance is void because it violates Government
Code section 481.143. The version of the statute in effect at the time of the dispute provides in
pertinent part:



The approval, disapproval, or conditional approval of an application for a permit
shall be considered by each regulatory agency solely on the basis of any orders,
regulations, ordinances, or other duly adopted requirements in effect at the time
the original application for the permit is filed. If a series of permits is required for
a project, the orders, regulations, ordinances, or other requirements in effect at the
time the original application for the first permit in that series is filed shall be the
sole basis for consideration of all subsequent permits required for the completion
of the project.



Act of June 16, 1987, 70th Leg., R.S., ch. 374, § 1, 1987 Tex. Gen. Laws 1838-39 (codified
1989) (amended 1995) (current version at Tex. Gov't Code Ann. § 481.143(3) (West Supp.
1996)). (5) The original version of this statute was made effective September 1, 1987.

 The Ordinance provides that, in affected watersheds, previously approved permits
expire on the earlier of one year after the effective date of the Ordinance or two years after the
date of the prior approval, whichever is later, subject to a 180-day period to obtain approval of
a final plat application filed before the expiration of the preliminary plan. Similarly, previously
approved site plans for projects in the affected watersheds expire on the earlier of August 8, 1993,
or three years after the prior approval, unless applications for the building permits for all
buildings are filed before the expiration date and thereafter approved and continued, with a
certificate of occupancy issued two years later. See Austin City Code § 13-7-36.7 (1996).

 Appellees argue that, insofar as the Ordinance shortens the duration of previously
approved permits, it violates Government Code section 481.143 because it allows a permit to be
based on law enacted after the permit application was filed. Appellees' argument is misplaced
because the version of Government Code section 481.143 in effect at the time of the dispute did
not prevent the Ordinance from shortening the duration of previously approved permits. 
Government Code section 481.143 was amended in 1995, expressly adding a provision that,
"[o]nce an application for a project has been filed, a regulatory agency shall not shorten the
duration of any permit required for the project." Tex. Gov't Code Ann. § 481.143 (West Supp.
1996). The 1995 amendments to section 481.143 changed the law and did not simply clarify it. 
See Williamson Pointe Venture v. City of Austin, 912 S.W.2d 340, 345 (Tex. App.--Austin 1995,
no writ) (holding that 1995 amendments to Government Code section 481.143 changed, not
clarified, scope of statute). Because the version of section 481.143 in effect at the time did not
prohibit the Ordinance from shortening the duration of previously issued permits, the judgment
may not stand on such a basis.

 Second, appellees contend that the Ordinance is void because it usurps the
TNRCC's authority, in violation of Water Code section 26.023, by setting numerical water quality
standards for the amount of contaminants found in runoff water. Water Code section 26.023
provides that the TNRCC has the sole and exclusive authority to set water quality standards for
all water in the State. Tex. Water Code Ann. § 26.023 (West Supp. 1996). The TNRCC defines
"standards" as, "[t]he designation of . . . numerical criteria deemed necessary to protect [water
bodies' desirable] uses." 31 Tex. Admin. Code § 307.3(31) (West 1995). The Ordinance
requires water quality controls such that the amount of certain contaminants found in runoff water
in the affected areas does not increase from its former levels. Appellees argue that in mandating
that levels of contaminants not increase, the Ordinance imposes a numerical standard. We
disagree. The Ordinance does not set numerical standards. Nowhere does the Ordinance establish
a numerical quantity for contaminants; the Ordinance is devoid of numerals in this context. 
Prohibiting an increase does not equal imposing a numerical quota. Therefore, the judgment
cannot stand on such a basis.

 Third, appellees contend that the Ordinance violates the constitutional guarantees
of substantive due process and equal protection because its means are not rationally related to its
goals. (6) Substantive due process demands that ordinances shall not be "arbitrary," "unreasonable,"
or "capricious," or, in other words, an ordinance's means shall have a real and substantial relation
to its objective. See, e.g., Chandler, 906 S.W.2d at 202. Similarly, under rational basis review,
to pass equal protection scrutiny, an ordinance's classification must be rationally related to a
legitimate state interest. Appellees claim that the Ordinance is unconstitutional because it places
burdens upon landowners unjustified by a legitimate state interest.

 There is a strong presumption in favor of the validity of municipal legislative
action, and the burden of proof is on the parties seeking to invalidate it. Haynes v. City of
Abilene, 659 S.W.2d 638, 640 (Tex. 1983). When reviewing for constitutional unreasonableness,
the judiciary accords great deference to the legislative action and should not substitute its own
public policy judgments for that of the enacting body. See Edgewood Indep. Sch. Dist. v. Meno,
893 S.W.2d 450, 459 (Tex. 1995). The Ordinance's goal is to protect the Barton Creek
Watershed, an invaluable natural resource for the entire community. The citizens of Austin have
determined that the most efficient way to protect the watershed is by limiting the amount of
impervious cover and contaminants in runoff rainwater in the Barton Creek Watershed zone. 
Clearly, measures taken to reduce the amount of runoff rainwater contaminants filtering into the
aquifer are rationally related to the goal of protecting the watershed from pollution. Given the
deferential standard of review, we refuse to assume a legislative function and reevaluate the public
policy considerations behind the Ordinance. We hold that the Ordinance does not offend either
substantive due process or equal protection guaranties. Contrary to appellees' assertions, they
have failed to identify independent grounds, unchallenged on appeal, to support the court's
judgment finding that the Ordinance is null and void.



Applicability of the Ordinance to Circle C Land Corp.'s Property

 In point of error five, the City argues that the court erred in rendering the following
order:



FURTHER, ORDERED, ADJUDGED, DECLARED and FINALLY DECREED
that any permit required by the Defendant City of Austin for Plaintiff Circle C
Corp.'s development of its property wherever located shall be considered solely
on the basis of the regulations and ordinances in effect at the time the original
application for preliminary subdivision approval was filed for any such property;
. . . .



The order is premised on Government Code section 481.143. The version of the statute in effect
at the time of the dispute provides in pertinent part:



The approval, disapproval, or conditional approval of an application for a permit
shall be considered by each regulatory agency solely on the basis of any orders,
regulations, ordinances, or other duly adopted requirements in effect at the time
the original application for the permit is filed. If a series of permits is required for
a project, the orders, regulations, ordinances, or other requirements in effect at the
time the original application for the first permit in that series is filed shall be the
sole basis for consideration of all subsequent permits required for the completion
of the project.



Act of June 16, 1987, 70th Leg., R.S., ch. 374, § 1, 1987 Tex. Gen. Laws 1838-39 (codified
1989) (amended 1995) (current version at Tex. Gov't Code Ann. § 481.143(3) (West Supp.
1996)). The original version of this statute was made effective September 1, 1987.

 Circle C Land Corp. applied for preliminary subdivision approval permits on
various tracts of land. Some of these permit applications were filed before September 1, 1987,
and some after. The City argues that the trial court erred by applying section 481.143
retroactively to Circle C Land Corp.'s permit applications filed before September 1, 1987.

 In order for section 481.143 to affect permit applications field before September
1, 1987, the statute must be applied retroactively. The Code Construction Act provides that, "a
statute is presumed to be prospective in its operation unless expressly made retroactive." Tex.
Gov't Code Ann. § 311.021 (West 1988) (emphasis added). Furthermore, "Texas law militates
strongly against the retroactive application of laws. Houston Indep. Sch. Dist. v. Houston
Chronicle, 798 S.W.2d 580, 585 (Tex. App.--Houston [1st. Dist.] 1990, writ denied). Nowhere
does section 481.143, expressly or impliedly, indicate that it has retroactive effect. Indeed, the
statute was amended in May 1995 and the changes were expressly made retroactive to September
1, 1987, the effective date of the original act. If legislation significantly differs from existing law,
the later legislation changes rather than clarifies existing law. See Tijierina v. City of Tyler, 846
S.W.2d 825, 828 (Tex. 1992); Williamson Pointe Venture, 912 S.W.2d at 345. Therefore,
because the 1995 version was expressly changed to make the statute retroactive, by implication,
the 1987 version, controlling in the instant cause, was not intended to be retroactive.

 Because section 481.143 became effective September 1, 1987, applications for the
"first permit in [a] series of permits" must have been filed after September 1, 1987, in order to
take advantage of the statute. Therefore, only the first of a series of permit applications filed
between September 1, 1987, and August 10, 1992, the effective date of the Ordinance, are not
subject to the Ordinance's provisions.

 Furthermore, the City argues that the trial court's order extends beyond the scope
of the pleadings, proof, and jury's answer. Once again the trial court's order states:



FURTHER, ORDERED, ADJUDGED, DECLARED and FINALLY DECREED
that any permit required by the Defendant City of Austin for Plaintiff Circle C
Corp.'s development of its property wherever located shall be considered solely 
on the basis of the regulations and ordinances in effect at the time the original
application for preliminary subdivision approval was filed for any such property;
. . . .



(emphasis added). Thus, the judgment refers to permits required for the development of any
property owned by Circle C Land Corp. The City points out, however, that section 481.143
concerns permits to develop projects, not property. (7) A "project" applies to a single, specific
endeavor to be undertaken on a piece of property. See Tex. Gov't Code Ann. § 481.142(3) (West
Supp. 1996). "Property" could refer to any and all projects to be undertaken on that property. 
Therefore, according to the judgment as written, the City argues that Circle C Land Corp. could
(1) obtain a preliminary site approval permit for its "property" in 1985, then (2) abandon its
originally intended project for that property, and (3) start a new and different project for the same
property in 2001 that would be subject to the rules and regulations in effect in 1985. We agree. 
To the extent the judgment refers to property instead of projects, it is beyond the scope of section
481.143 and therefore in error.

 Finally, the City argues that, as written, the judgment applies to all of Circle C
Land Corp.'s property wherever located, and arguably whenever acquired. The City notes that
the landowners' pleadings only concern certain parcels of property owned at the time of trial. 
Therefore, the City argues, to the extent the judgment refers to property wherever, and arguably
whenever, located, the judgment exceeds the scope of the pleadings. See Cunningham v. Parkdale
Bank, 660 S.W.2d 810, 813 (Tex. 1983).

 This Court has the authority to modify a judgment and render judgment that the
trial court should have entered when justice requires. See Tex. R. App. P. 81(c); New Braunfels
Nat'l Bank v. Odiorne, 780 S.W.2d 313, 320 (Tex. App.--Austin 1989, writ denied). Therefore,
we sustain the City's fifth point of error and modify the portion of the judgment below pertaining
to section 481.143 of the Government Code as follows:



FURTHER, ORDERED, ADJUDGED, DECLARED and FINALLY DECREED
that any permit required by the Defendant City of Austin for Plaintiff Circle C
Land Corp.'s development of a project on property that is the subject of this suit
shall be considered solely on the basis of the regulations and ordinances in effect
at the time the original application for preliminary subdivision approval was filed
for any such project, so long as such permit application was filed after September
1, 1987; . . . .



Attorney's Fees

 In point of error fourteen, the City contends that, in the event that this Court were
to reverse the judgment of the trial court, we should reverse the award of attorney's fees as well. 
The City argues that it would be unreasonable to uphold an award of attorney's fees premised on
a substantial victory in the trial court if we were to largely reverse that victory on appeal.

 The award of attorney's fees lies within the discretion of the trial court. Oake v.
Collin County, 692 S.W.2d 454, 455 (Tex. 1985). In the instant cause, the trial court's judgment
expressly conditioned the award of attorney's fees "on the successful defense of this judgment in
material respects in the event of appellate review . . . ." (emphasis added). On appeal, we have
reversed nearly all of the relief granted to appellees in the trial court's judgment. Consequently,
appellees have not successfully defended the trial court's judgment in material respects. 
Therefore, according to the express terms of the trial court's judgment, we reverse the award of
attorney's fees and render judgment that appellees take nothing in attorney's fees. We sustain the
City's point of error fourteen.



CONCLUSION 


 We overrule the Coalition's first point of error and dismiss its remaining points of
error. We sustain all of the City's points of error. We reverse that portion of the trial court's
final judgment declaring the Ordinance void and prohibiting its application against appellees'
property. We render judgment that the Ordinance is a valid legislative act and need not be
approved by the TNRCC to become effective and enforceable. In accordance with this opinion,
we modify the judgment of the trial court as it pertains to the law governing Circle C Land
Corp.'s permit applications and affirm that portion of the judgment as modified. Furthermore,
we reverse the trial court's award of attorney's fees and render judgment that appellees take
nothing in attorney's fees.



 

 Jimmy Carroll, Chief Justice

Before Chief Justice Carroll, Justices Aboussie and Kidd

Modified, and as Modified, Affirmed in Part; Reversed and Rendered in Part

Filed: July 31, 1996

Publish

1.   The City Council did not enact the Ordinance exactly as ratified in the referendum
election. However, the Intervenors in this cause, who are the successors in interest to the
Steering Committee, have not complained on appeal that the Ordinance as enacted does
not adequately conform to the version enacted in the referendum election. 
2.   We note that in Southern Canal, the statute called upon the judiciary to review an
agency order. In the instant cause, the statute calls upon the judiciary to review a legislative
action. We find this prospect equally troubling.
3.   Unlike subsection (d), by its express terms subsection (c) applies only to programs
established pursuant to subsections (a) and (b). Therefore, if the Ordinance was established
pursuant to some other authority or directive, subsection (c)'s requirements would not apply. 
However, for the purposes of our discussion, unless otherwise indicated, we will assume,
without deciding, that the Ordinance is subject to the requirements of subsection (c).
4.   Texas Government Code section § 311.023(4) authorizes a court to construe "former
statutory provisions, including laws on the same or similar subjects" in construing a
statute. Tex. Gov't Code Ann. § 311.023(4) (West 1988).
5.   All references to this statute will be to the version in effect at the time of the dispute
unless otherwise indicated.
6.   Appellees do not argue which standard of review is appropriate in evaluating their
equal protection argument: "strict scrutiny" or "rational basis." Instead, they merely
argue that the Ordinance's means must have a "rough proportion" to its goals. 
Appellees' argument most closely resembles the rational basis standard of constitutional
review. Therefore, we shall employ such a standard. 


 Moreover, appellees do not distinguish their due process and equal protection
arguments. Instead, appellees make the consolidated argument that the Ordinance
offends both constitutional provisions because its means do not rationally relate to its
ends.
7.   "Permit" means a license, certificate, approval, registration, consent, permit, or
other form of authorization required by law, rule, or regulation, ordinance that must be
obtained in order to perform a project for which the permit is sought. Tex. Gov't Code
Ann. § 481.142(2) (West Supp. 1996).